**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DANILO PENNACCHIA,

          Petitioner-Appellant,

v.

DENA MICHELLE HAYES,

          Respondent-Appellee.

No.   16-35635

D.C. No. 1:16-cv-00173-EJL

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and submitted December 9, 2016
Seattle, Washington

Before: TALLMAN and CHRISTEN, Circuit Judges, and ENGLAND,[**] District
Judge.

     Danilo Pennacchia appeals from the district court's denial of his petition to

return his minor child to Italy under the Hague Convention on the Civil Aspects of

---

     [*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

     [**]     The Honorable Morrison C. England, Jr., United States District Judge
for the Eastern District of California, sitting by designation.

International Child Abduction.[1]  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[2]

Article 3 of the 1980 Hague Convention provides that the removal or retention of a child is wrongful where it is in breach of actually exercised custody rights under the law of a state in which the child was habitually resident immediately before the removal or retention.  Convention, art. 3, 19 I.L.M. at 1501.  The parties' dispute hinges on SAPH's habitual residence under the Convention.

"[W]e approach the question of habitual residence as a mixed question of law and fact."  *Valenzuela v. Michel*, 736 F.3d 1173, 1176 (9th Cir. 2013).  We give "appropriate deference to the district court's findings of fact and credibility determinations," and "accept the district court's historical or narrative facts unless they are clearly erroneous."  *Papakosmas v. Papakosmas*, 483 F.3d 617, 622–23 (9th Cir. 2007) (quotation marks and citation omitted).  "After scrutinizing the circumstances of a particular case, we must determine whether the discrete facts

---

[1]  Oct. 25, 1980, 19 I.L.M. 1501, as implemented by the International Child Abduction Remedies Act (ICARA), 22 U.S.C. §§ 9001–11 (hereinafter the 1980 Hague Convention or the Convention).

[2]  The parties are familiar with the facts, so we do not recount them here. Following the practice of the parties and in the interest of privacy, we will refer to the child as SAPH throughout this disposition.

add up to a showing of habitual residence," *Holder v. Holder*, 392 F.3d 1009, 1015 (9th Cir. 2004), and we review "the ultimate issue of habitual residence de novo." *Valenzuela*, 736 F.3d at 1176 (quoting *In re B. Del C.S.B*, 559 F.3d 999, 1008 (9th Cir. 2009)).

The parties agree that to determine a child's habitual residence, we first "look for the last shared, settled intent of the parents." *Valenzuela*, 736 F.3d at 1177 (citing *Mozes v. Mozes*, 239 F.3d 1067, 1084 (9th Cir. 2001)). Our court was recently invited "to adopt a habitual residence standard that would focus on the subjective experiences of the child" and declined to do so. *Murphy v. Sloan*, 764 F.3d 1144, 1150 (9th Cir. 2014).

The district court concluded SAPH's habitual residence was the United States. In doing so, the court applied the correct legal standard by focusing on the "shared, settled intent of the parents." *See Holder*, 392 F.3d at 1020 n.11 (observing that even for a new born baby "[i]t is the settled intentions of the parents that render that 'residence' of the baby habitual" (citation omitted)). The district court acknowledged that the parents' testimony differed concerning their intentions at the time they left the United States, but found Pennacchia's "testimony lacks credibility and evidence to support his position." We give heavy deference to factual determinations such as which witnesses to believe and which

3

documents corroborate the most credible version of disputed testimony. *See, e.g.*, FED. R. CIV. P. 52(a) (reviewing courts "must give due regard to the trial court's opportunity to judge the witnesses' credibility"). The district court found Pennacchia agreed to and signed several documents, including paperwork appointing United States guardians, that support the mother's testimony and evidenced the parties' initial agreement that "their living arrangement in Italy was conditional and 'a trial period.'" The district court did not err when it concluded that, for both parents, "the settled intention was for SAPH's habitual residence to be the United States."

For SAPH's habitual residence to change, "the agreement between the parents and the circumstances surrounding it must enable the court to infer a shared intent to abandon the previous habitual residence." *Mozes*, 239 F.3d at 1081. "Although it is possible for a child's contacts standing alone to be sufficient for a change in habitual residence, in view of 'the absence of settled parental intent, [we] should be slow to infer from such contacts that an earlier habitual residence has been abandoned.'" *Holder*, 392 F.3d at 1019 (alteration in original) (quoting *Mozes*, 239 F.3d at 1079). "To infer abandonment of a habitual residence by acclimatization, the 'objective facts [must] point *unequivocally* to [the child's]

4

ordinary or habitual residence being in [the new country].'" *Murphy*, 764 F.3d at 1152 (emphasis and alterations in original) (quoting *Mozes*, 239 F.3d at 1081).

SAPH has significant contacts in Italy, but the district court did not find a shared parental intent to abandon her habitual residence in the United States or that the objective facts point unequivocally to a change in SAPH's habitual residence. Pennacchia did not meet his burden on acclimatization, and therefore, the district court did not err by concluding SAPH's habitual residence under the 1980 Hague Convention remains the United States. The district court properly denied Pennacchia's petition.

The parties shall bear their own costs on appeal.

AFFIRMED.